UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SINCLAIR, PATRICIA SINCLAIR,
REBEL SCRAP METAL LLC, AND
PARTS-A-PLENTY INC.,

        Plaintiff,

v.

P.O. ALFREDO JIMENEZ,
SGT. JONATHAN PARNELL,
P.O. DEREK OWENS, AND
DET. FRANK LENZ,

        Defendants.

Case No. 15-cv-12697

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER GRANTING DEFENDANT FRANK LENZ'S MOTION TO DISMISS [32], DISMISSING PLAINTIFFS' FEDERAL CLAIMS, AND DECLINING TO EXERCISE JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS**

**I. INTRODUCTION**

On July 31, 2015, James Sinclair, Patricia Sinclair, Rebel Scrap Metal, LLC, and Parts-A-Plenty, Inc. filed this lawsuit against four police officers alleging that their constitutional rights were violated when property was seized from their business during a criminal raid. Dkt. No. 1.

The matter is presently before the Court on Defendant Frank Lenz's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(c), filed on April 25, 2017. Dkt. No. 32. Plaintiffs did not file a response. City of Detroit Defendants

filed a response on June 6, 2017, arguing that claims raised by Defendant Lenz apply equally to City of Detroit police officers. Dkt. No. 40. On June 8, 2017, the Court conducted a hearing on the motion and heard oral arguments. For the reasons discussed herein, the Court **GRANTS** Defendant Lenz's Motion to Dismiss [32], **DISMISSES** Plaintiffs' federal claims, and declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

## II. BACKGROUND

On August 1, 2012, the Detroit Police Department received an anonymous phone tip that there were stolen cars on the property of Rebel Scrap Metal, LLC. Dkt. No. 1, p. 5 (Pg. ID 5). James Sinclair had not yet obtained licensing from the State of Michigan and City of Detroit for Rebel Scrap. *Id*. at 4–5. The following day, Detroit police officers set up surveillance and observed a pick-up truck with a broken window and missing license plate pull into the business. *Id*. at 5. Approximately thirty minutes later, Detroit police advised James Sinclair that they would be conducting a business inspection of Rebel Scrap. *Id*. at 6.

James Sinclair informed the officers that the business was not yet open because licensure applications were still pending. *Id*. at 6–7. There were about 150 vehicles in the yard, which James Sinclair had been purchasing and storing. *Id*. Officers ran a VIN check on the pick-up truck they had observed driving onto the

premises that afternoon and found it had been reported stolen. *Id*. at 7. Officers then arrested James Sinclair and took him to the 2nd Precinct police station. *Id*.

Around 6:00 p.m. that day, Defendant Frank Lenz, an Oakland County Sheriff's Department Detective working with the Commercial Auto Theft Section of the Detroit Police Department, prepared a search warrant. *Id*. Lenz spoke with a prosecutor, and then called Magistrate Sherman of the 36th District Court to obtain a search warrant. *Id*. at 8. At the Magistrate's direction, Lenz signed the warrant. *Id*. Lenz then radioed officers at the business that he had a signed search warrant, at which point the officers resumed searching the property. *Id*.

Tow trucks began arriving at the property to remove vehicles. Lenz was allegedly in charge of inventorying vehicles that left the property, which included vehicles owned by James and Patricia Sinclair that were purchased and registered prior to Rebel Scrap's existence. *Id*. On the direction of a Detroit police officer, all vehicles located on the property were seized and towed. *Id*. at 9. James and Patricia Sinclair's personal vehicles were seized for possible forfeiture in connection with criminal charges. *Id*. Police removed property from Rebel Scrap all night, concluding at 1:30 a.m. the next day. *Id*. at 10.

James Sinclair was subsequently charged with Conducting a Criminal Enterprise, contrary to MICH. COMP. LAWS § 750.159i; Operating a Chop Shop, contrary to MICH. COMP. LAWS § 750.535a; and twenty-three counts of Receiving

3

and Concealing Stolen Property, contrary to MICH. COMP. LAWS § 750.535(7). *Id*. James Sinclair filed a motion to suppress evidence, quash the information, and return personal property during the criminal proceedings. *Id*.; Dkt. No. 32-2, p. 4 (Pg. ID 177). The trial court found the search and seizure, including the search warrant and administrative search, were lawful. *Id*. at 14–15 (Pg. ID 187–88). The judge further concluded that the seizure of property for criminal forfeiture was meritorious and the State of Michigan did not need to immediately return the property. *Id*. at 16 (Pg. ID 189).

James Sinclair took an interlocutory appeal to the Michigan Court of Appeals, challenging the lawfulness of both the administrative search and the seizure of property. Dkt. No. 32-3, p. 1 (Pg. ID 196). The appeal was denied on December 30, 2013. *Id*. James Sinclair then sought leave to appeal to the Michigan Supreme Court. Dkt. No. 32-4, p. 1 (Pg. ID 197). This request was denied on February 3, 2015. *Id*. On January 19, 2016, James Sinclair entered a plea of *nolo contendere*. Dkt. No. 32-5, p. 1 (Pg. ID 198). He was sentenced on April 18, 2016. *Id*.

### III. LEGAL STANDARD

A district court's denial of a motion for judgment on the pleadings under Federal Civil Rule 12(c) is "analyzed under the same de novo standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*,

526 F.3d 291, 295 (6th Cir. 2008). This Court is required to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff" when scrutinizing a complaint under Rule 12(b)(6). *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). Although a complaint need not contain "detailed factual allegations," it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When ruling on a Rule 12(c) motion, the Court may take "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" into account. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). The Court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). To withstand a Rule 12(c) motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id*.

5

## IV. DISCUSSION

In their Complaint, Plaintiffs allege eight claims. Dkt. No. 1, pp. 11–19 (Pg. ID 11–19). Claims against the City of Detroit—specifically Count V, the *Monell* claim—and police officers in their official capacities have since been voluntarily dismissed. Dkt. No. 18.

The remaining claims are: Count I, alleging unreasonable search and seizure, pursuant to 42 U.S.C. § 1983, by all plaintiffs against all defendants; Count II, alleging unreasonable search and seizure, pursuant to 42 U.S.C. § 1983, by all plaintiffs against all defendants; Count III, alleging unreasonable seizure of property for purpose of forfeiture, pursuant to 42 U.S.C. § 1983, by all plaintiffs against all defendants; Count IV, alleging arrest and imprisonment without probable cause, pursuant to 42 U.S.C. § 1983, by James Sinclair against all defendants; Count VI, alleging common law false arrest and imprisonment by James Sinclair against all defendants; Count VII, alleging common law conversion by all plaintiffs against all defendants; and Count VIII, alleging statutory conversion by all plaintiffs against all defendants. Dkt. No. 1, pp. 11–19 (Pg. ID 11–19).

Defendant Lenz argues that the claims against him must be dismissed based on qualified immunity; that James Sinclair's claims are barred by *Heck v.*

*Humphrey*; and that James Sinclair's claims are barred by collateral estoppel. Dkt. No. 32, p. 12 (Pg. ID 154).

**A.** *Heck v. Humphrey*

In *Heck v. Humphrey*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. 477, 486–87 (1994) (footnote and internal citation omitted). The Court explained, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487.

Here, as an initial matter, James Sinclair's sentence has not been reversed or otherwise declared invalid. Further, a finding that Defendant Lenz violated James Sinclair's Fourth Amendment rights would be counter to the explicit findings of the trial court, and would imply the invalidity of his conviction. While the Sixth Circuit has held that a plaintiff's § 1983 claim may proceed if the plaintiff's arrest did not uncover any evidence upon which the conviction is based, *see Graves v. Mahoning Cnty.*, 534 F. App'x 399, 405 (6th Cir. 2013) (noting that there was "no allegation that authorities seized any evidence during the arrests"), that is not the

case here. In this case, a Fourth Amendment violation would invalidate James Sinclair's conviction because the search of Rebel Scrap uncovered the evidence key to the crimes for which he pleaded *nolo contendere*. For this reason, the *Heck* doctrine bars James Sinclair from bringing his § 1983 claims.

**B.     Collateral Estoppel**

Issues decided in a state court criminal proceeding may have a collateral estoppel effect in a § 1983 action, but only as to relitigation of the same issues that were previously decided in the criminal proceeding. *See Allen v. McCurry*, 449 U.S. 90, 103–04 (1980). In determining whether there is a preclusive effect, the court must look to state law. *See Donovan v. Thames*, 105 F.3d 291, 294–95 (6th Cir. 1997).

Under Michigan law, collateral estoppel applies to issues that were actually litigated and reduced to a valid judgment. *See Lichon v. American Universal Ins. Co.*, 435 Mich. 408, 428 (1990). Where the factual issue a plaintiff identifies in federal court is the same as the issue presented and decided during state court proceedings, the Eastern District of Michigan has found that the "identity of issues" element of collateral estoppel is satisfied. *See Redmond v. Sanders*, 858 F. Supp. 2d 809, 816 (E.D. Mich. 2012).

Additionally, "[f]or collateral estoppel to apply, the parties in the second action must be the same as, or in privity to, the parties in the first action." *Husted v.*

*Auto-Owners Ins. Co.*, 213 Mich. App. 547, 556, 540 N.W.2d 743, 747 (1995), *aff'd sub nom. Husted v. Dobbs*, 459 Mich. 500, 591 N.W.2d 642 (1999). Individuals are in privity to a party if, after a judgment, the individuals have an interest in the matter affected by the judgment. *Id*.

Although James Sinclair pleaded *nolo contendere*, rather than guilty, his guilt is not the issue that is sought to be relitigated. Rather, Plaintiffs dispute that there was probable cause for the search, seizure, and arrest of James Sinclair here, just as they did during Sinclair's criminal proceedings. This issue was expressly decided by the state court, which ruled that the search, seizure, and possession of property during forfeiture proceedings were valid. Dkt. No. 32-2, p. 4, 14–15 (Pg. ID 177, 187–88).

James Sinclair's criminal case has concluded, as have his appeals of the trial court's judgments. James Sinclair has been convicted, sentenced, and has completed his sentence. Under 28 U.S.C. § 1738, federal courts are required to give state court judgments the preclusive effects they would be given by another court of that state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984). Thus, based on the record of state court proceedings, it appears that the issues raised in this case—whether the search, arrest, and seizure was lawful—were actually litigated and reduced to a valid judgment. Accordingly, James Sinclair's § 1983 claims are barred by collateral estoppel.

As to Plaintiffs Patricia Sinclair, Rebel Scrap LLC, and Parts-A-Plenty Inc., the evidence before the Court indicates that their interest in this case also hinges on the determination made by the state court regarding the lawfulness of the August 2012 search and seizure. Accordingly, it would appear that they are in privity with James Sinclair as to their § 1983 claims, and would also be collaterally estopped from challenging the validity of legal matters already litigated and decided. Thus, all Plaintiffs' § 1983 claims are barred by collateral estoppel.

## C. Defendants Are Entitled to Qualified Immunity

"Although violations of constitutional rights by government officials acting under color of state law are generally subject to redress under 42 U.S.C. § 1983, the doctrine of qualified immunity shields officials from liability 'insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.' " *Peatross v. City of Memphis*, No. 15-5288, 2016 WL 1211916, at *4 (6th Cir. Mar. 29, 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly" with "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is important to resolve qualified immunity questions at the

earliest possible stage, as the immunity is effectively lost, if the case is erroneously permitted to go to trial. *Peatross*, 2016 WL 1211916, at *4.

There is a two-step inquiry to determine whether government officials are entitled to qualified immunity. *Id.* at *5. First, do the facts, when viewed in the light most favorable to the plaintiff, show that the officers' conduct violated a constitutional right? *Id.* Second, was the right clearly established at the time of the violation? *Id.* To defeat the defense of qualified immunity, "Plaintiff[] bear[s] the burden of showing that a clearly established right has been violated and that the official's conduct caused that violation." *Essex v. Cty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013).

An officer is entitled to qualified immunity where "clearly established law does not show that the [action] violated the Fourth Amendment." *Pearson*, 555 U.S. at 243–44. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.' " *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

Here, Plaintiffs have not demonstrated that Defendant officers' conduct violated a clearly established right. Even if Plaintiffs had demonstrated their constitutional rights were violated, they have not provided analogous case law that demonstrates that it was clearly established at the time that Lenz allegedly signed the warrant at the magistrate judge's direction that such an act violated their

11

Constitutional rights. The Complaint has further not alleged that Defendant Lenz was involved with the seizure and retention of property upon which Plaintiffs' conversion claims are premised. Additionally, Plaintiffs have not provided the Court with case law that Defendant officers from City of Detroit violated any of their clearly established rights.

Accordingly, the Court grants Defendants' request for qualified immunity.

## D. Plaintiffs Rebel Scrap Metal LLC And Parts-A-Plenty Inc. May Not Proceed Without Counsel

Plaintiff Rebel Scrap Metal LLC is a Michigan Limited Liability Company incorporated in Wyoming. Dkt. No. 1, p. 3 (Pg. ID 3). Plaintiff Parts-A-Plenty Inc. is a Michigan Foreign Corporation incorporated in Wyoming. *Id*. Neither of these two Plaintiffs is a "person" for purposes of litigating in federal court and proceeding without counsel.

"It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) (citing *Osborn v. President of Bank of United States*, 9 Wheat. 738, 829 (1824)). This is the law in the Sixth Circuit. *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) ("The rule of this circuit is that a corporation cannot appear in federal court except through an attorney.").

Although Plaintiffs Rebel Scrap Metal and Parts-A-Plenty were represented by counsel at the time the Complaint was filed in July 2015, they have been unrepresented since November 2016. *See* Dkt. Nos. 20, 24. The Court granted Plaintiffs several months to secure new counsel, but corporate Plaintiffs have been consistently unrepresented for more than six months. Only Plaintiff James Sinclair has attended motion hearings and status conferences on the case.

Accordingly, because Plaintiffs Rebel Scrap Metal and Parts-A-Plenty are corporations attempting to proceed unrepresented by counsel, their claims must be dismissed.

### E. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims

The Court has found, pursuant to the Heck doctrine and collateral estoppel, that Plaintiffs' remaining federal claims—Counts I–IV, all Fourth Amendment claims arising under § 1983—must be dismissed with prejudice. For the reasons stated below, the Court will decline to exercise supplemental jurisdiction as to Plaintiffs' remaining state and common law claims.

Under the standard enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), and codified in 28 U.S.C. § 1367(c), this Court has broad discretion to exercise its supplemental jurisdiction. Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over related state claims if:

(1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The United States Supreme Court has stated that:

> Our decisions have established that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right, and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons . . . Accordingly, we have indicated that district courts should deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (internal citations and quotations omitted).

In this instance, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state and common law claims because the Court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Accordingly, the Court will dismiss Plaintiffs' Counts VI–VIII without prejudice.

### V. Conclusion

Accordingly, for the reasons discussed in detail above, the Court **GRANTS** Defendant Lenz's Motions to Dismiss [32]. All claims by James Sinclair against Defendant Lenz are **DISMISSED WITH PREJUDICE**.

**IT IF FURTHER ORDERED** that Plaintiffs' remaining federal claims (Counts I–IV) are **DISMISSED WITH PREJUDICE** as to all remaining Defendants.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiffs' state and common law claims against remaining Defendants. Counts VI–VIII are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

Dated:	June 14, 2017

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record and on James Sinclair at 20949 Sherman Avenue, Southfield, MI, 48033 on
June 14, 2017, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Case Manager